UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



Liberty Mutual Insurance Company,

Plaintiff,

—v—

Project Tri-Force, LLC,

Defendant.

18-cv-427 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

This action arises out of an insurance contract between Plaintiff Liberty Mutual Insurance Company and Defendant Project Tri-Force. Before the Court is Plaintiff's motion for a default judgment. For the reasons given below, the Court grants this motion in full.

I. **Background**

Plaintiff is an insurance company organized under Massachusetts law and with a principal place of business in Boston, Massachusetts. Compl. ¶ 4. Defendant is a corporation organized under the laws of Delaware with a principal place of business in New York, New York. Compl. ¶ 5. The parties entered into a marine insurance policy (the "Policy"). Compl. ¶ 8. Under the Policy, Plaintiff would be subrogated to the rights of Defendant in the event of a payment for any loss, damage, or expense. Compl. ¶ 9. The Policy included an Impairment of Recovery provision, under which Defendant "shall not waive, transfer, or take any action tending to defeat or decrease any claim against the carrier or other person or persons, whether before or after the insurance is effected under this policy." Compl. ¶ 10. The Policy ran from October 20, 2016 to October 20, 2017. Compl. ¶ 8.

On or around March 30, 2017, Defendant submitted claims under the Policy for damages

1

to a shipment of figurines from China, which had been delivered on or around January 23, 2017. Compl. ¶ 12. After investigating Defendant's claims related to the shipment, it was determined that the damage was caused by wet and/or improper packaging by Genimex Jersey Ltd. ("Genimex"), which had packaged the shipments. Compl. ¶ 13. In or around July 2017, Plaintiff paid Defendant $128,791.92 for its claim arising from the damage. Compl. ¶ 14. On or around July 5, 2017, Defendant signed subrogation receipts that, *inter alia*, assigned and transferred all claims arising from the shipments to Plaintiff and warranted that no settlement regarding the claims had been made and no release had been given. Wamser Affidavit, Dkt. No. 20, ¶¶ 29, Ex. 7. Yet when Plaintiff sought to pursue its subrogation claim against Genimex regarding the shipments, Genimex advised Plaintiff that on April 14, 2017, it had entered into a settlement agreement with Defendant. Compl. ¶¶ 18, Ex. 1. This agreement released Genimex from claims relating to the subject shipments. Compl. ¶ 19, Ex. 1. It was signed by Defendant's Chief Financial Officer. Compl. ¶ 20. This agreement and release impaired or extinguished Plaintiff's subrogation rights against Genimex. Compl. ¶¶ 26-28.

On January 17, 2018, Plaintiff filed a Complaint against Defendant, seeking damages for breach of the Policy and the subrogation receipts. *See* Compl. Plaintiff sought damages in the amount of $128,791.92, along with attorney's fees, costs of suit, and other further relief the Court deems just and proper. Compl. at 6. Proof of service by a Special Process Server was filed with the Court on March 27, 2018. Dkt. 6. Plaintiff alleges that its "process server initially attempted personal service of the Summons and Complaint on Project Tri-Force at its business address in Manhattan on March 5, 2018 but was advised by building security that Project Tri-Force was apparently out of business." Wamser Affidavit ¶ 8, Ex. 3. The process server then proceeded on March 9, 2018, to effectuate personal service on Project Tri-Force's designated

2

agent for service of process, CT Corporation. Wamser Affidavit ¶ 8, Ex. 2.

Defendant was required to answer by March 30, 2018, Dkt. No. 6, but failed to do so. On May 10, 2018, Plaintiff's counsel "emailed a copy of the Summons and Complaint together with the Court's Notice of Initial Pretrial Conference to, upon information and belief, the principal of Project Tri-Force." Wamser Affidavit ¶ 11, Ex. 4. Plaintiff's counsel did not receive any response. Wamser Affidavit ¶ 11.

Pursuant to Plaintiff's request, the Clerk entered a certificate of Default on August 1, 2018. Dkt. 16. Plaintiff moved for default judgment on August 31, 2018, accompanied by an affidavit from counsel, a statement of damages, and a proposed default judgment. Dkts. 19-22.

## II. Jurisdiction and Choice of Law

Whether a contract gives rise to admiralty jurisdiction "depends upon . . . the nature and character of the contract" and "whether it has 'reference to maritime service or maritime transactions.'" *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 24 (2004) (quoting *North Pacific S.S. Co. v. Hall Bros. Co.*, 249 U.S. 119, 125 (1919)). The Court has admiralty jurisdiction over this case involving a marine insurance contract. *New York Marine & Gen. Ins. Co. v. Tradeline (L.L.C.)*, 266 F.3d 112, 121 (2d Cir. 2001) ("Federal admiralty jurisdiction extends to cases involving marine insurance contracts."). As a result, the Court will also apply substantive federal law, since there is nothing inherently local about the insurance contract in this matter, which "may well have been made anywhere in the world[.]" *Norfolk*, 543 U.S. at 22–23.

## III. Legal Standard

Federal Rule of Civil Procedure 55 sets out a two-step procedure to be followed for the entry of judgment against a party who fails to defend: the entry of a default, and the entry of a default judgment. *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005). The first step, entry of a

default, simply "formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011). The second step, entry of a default judgment, "converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted by Rule 54(c)." *Mickalis Pawn Shop*, 645 F.3d at 128.

Whether entry of default judgment at the second step is appropriate depends upon whether the allegations against the defaulting party are well-pleaded. *See Mickalis Pawn Shop*, 645 F.3d at 137. Once a party is in default, "a district court must accept as true all of the factual allegations of the non-defaulting party and draw all reasonable inferences in its favor." *Belizaire v. RAV Investigative and Sec. Servs., Ltd.*, 61 F. Supp. 3d 336, 344 (S.D.N.Y. 2014). But because a party in default does not admit conclusions of law, a district court must determine whether the plaintiff's allegations are sufficient to establish the defendant's liability as a matter of law. *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). The legal sufficiency of these claims is analyzed under the familiar plausibility standard enunciated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *Belizare*, 61 F. Supp. 3d at 344.

If liability is found, a Court turns next to damages. "Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). The court must "ascertain the amount of damages with reasonable certainty." *Id.* However, an inquest is not necessary if "the amount is liquidated or susceptible of mathematical computation." *Muskin v. Ketchum*, No. 04 CIV. 283(KNF), 2004

WL 2360151, at *1 (S.D.N.Y. Oct. 20, 2004) (quoting *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir.1974)).

## IV. Discussion

To prevail on its breach of contract claim on default judgment, Plaintiff must have sufficiently alleged "(1) the existence of a contract between itself and that defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by that defendant; and (4) damages to the plaintiff caused by that defendant's breach." *OOCL (USA) Inc. v. Transco Shipping Corp.*, No. 13-CV-5418(RJS), 2015 WL 9460565, at *4 (S.D.N.Y. Dec. 23, 2015) (quoting *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011)). Here, Plaintiff has alleged the existence of two relevant agreements, the Policy and the subrogation receipts, and that it performed its duties under both. Compl. ¶¶ 8-11, 14-17. Plaintiff has also sufficiently alleged that Defendant breached those agreements by entering the settlement with Genimex, which impaired or extinguished Plaintiff's subrogation rights. Compl. ¶¶ 18-22. Finally, Plaintiff's allegations clearly make out that Plaintiff was harmed by Defendant's breaches. Since Plaintiff paid out the claim for the damaged shipment on the understanding that it could then pursue its subrogation rights against Genimex, Compl. ¶ 22, Plaintiff was clearly harmed by the fact that Defendant's action rendered Plaintiff unable to pursue those rights. Therefore, Plaintiff has sufficiently alleged a breach of contract claim against Defendant.

As to damages, pursuant to the Policy, Plaintiff was entitled to deduct from its payment to Defendant "a sum equal to the estimated recovery lost by reason of [Defendant's] action or inaction." Compl. ¶ 10. In this case, Plaintiff requests the entirety of the sum it paid to Defendant for the damage to the shipment. The Court agrees that Plaintiff is entitled to this sum.

Plaintiff relied on Defendant's warranty that it had not settled or released Genimex in agreeing to pay the claim under the subrogation and receipts. Furthermore, Defendant stood to recover up to $217,000 under its agreement and release with Genimex, Wamser Affidavit, Ex. 1, indicating an even higher potential estimated recovery than the amount paid by Plaintiff to Defendant. Therefore, Plaintiff is entitled to $128,791.92 in damages.

As to interest, the Second Circuit has indicated that "[t]o make an injured party whole, pre-judgment interest should be awarded in admiralty cases absent exceptional circumstances." *Jones v. Spentonbush-Red Star Co.*, 155 F.3d 587, 593 (2d Cir. 1998). Finding no exceptional circumstances here, the Court will grant Plaintiff prejudgment interest pursuant at the 52-week Treasury Bill rate proposed in its statement of damages. Dkt. 21.

The Court will also grant Plaintiff's request for $485.00 for the Clerk's fee and a process server fee. Dkt. 21.

**V. Conclusion**

For the reasons given above, the Court grants Plaintiff's motion for default judgment in full. The Court awards Plaintiff $128,791.92 in damages. The Court also awards Plaintiff interest as calculated in Plaintiff's statement of damages of $2,014.38 for the period between July 5, 2017 through August 31, 2018. The Clerk of Court is directed to calculate interest as of September 1, 2018 until the date of judgment pursuant to the 52-week treasury bill rate for September 1, 2018 of 2.46%. The Court also awards Plaintiff $485.00 in fees. This resolves docket item number 19. The Clerk is directed to enter judgment and mark this case as closed.

SO ORDERED.

Dated: March 26, 2019
New York, New York

_____
ALISON J. NATHAN
United States District Judge